**SO ORDERED.**

**SIGNED this 3rd day of October, 2022.**



*Dale L. Somers*
United States Chief Bankruptcy Judge

___

Designated for online not print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

**Rocking M Media, LLC,**

        **Debtor.**[1]

Case No. 22-20242
Chapter 11

**Memorandum Opinion and Order
Denying Debtor Rocking M Media, LLC's
Motion to Disband or Reformulate Unsecured Creditors' Committee
and
Objections to Appointment of Professionals for the Committee**

Following argument on September 15, 2022, the Court took under

advisement four matters relating to the Official Committee of Unsecured

___

[1] This case is administratively consolidated with the cases of three additional related debtors. The debtors in these Chapter 11 cases, their case numbers, and acronyms are: Rocking M Media, LLC (RMM), case no. 22-20242 (lead case); Rocking M Media Wichita, LLC (RMMW), case no. 22-20243; Rocking M Radio, Inc. (RMR), case no. 22-20244; and Melia Communications, Inc. (MCI), case no. 22-20245.

Creditors (the Committee) appointed by the United States Trustee (UST) in the case of Rocking M Media, LLC (RMM). They are: (1) RMM's motion to disband or reformulate the Committee asserting that the appointment was arbitrary and capricious;[2] (2) the Committee's application to employ Loeb & Loeb, LLP as counsel;[3] (3) the Committee's application to employ Swanson Bernard, LLC, as local counsel;[4] and (4) the Committee's application to employ Dundon Advisers, LLC as financial advisors.[5] The Committee objects to the first matter, asserting the appointment was not arbitrary and capricious. RMM poses a limited objection to each of the three motions to appoint based upon the agreed hourly rates for the professionals. Having carefully considered the arguments of counsel, the briefs, and applicable law, the Court hereby denies RMM's motion to disband or reformulate the Committee and grants the three challenged motions to employ professionals. Although the Court is very sympathetic to RMM's concerns, the administration of Chapter 11 cases as provided by the Code and established Chapter 11 procedure dictate these rulings.

---

[2] Doc. 156.

[3] Doc. 182.

[4] Doc. 184.

[5] Doc. 186.

**Background Facts**

Debtor RMM, directly and through three affiliated companies, who are also debtors under Chapter 11 (referred to collectively as Debtors), owns and operates radio stations, radio networks, and digital media platforms that provide music, news, sports, and weather to its listeners and viewers in western and central Kansas, as well as portions of Nebraska, Colorado, Oklahoma, and Texas. RMM is the licensee of 23 stations and the affiliated companies are licensees of five stations.

Debtors filed for relief on March 26, 2022, under subchapter V of Chapter 11. A motion for joint administration was granted, with RMM as the lead case. When the cases were filed, Debtors collectively had 34 employees and approximately 275 creditors.[6] In 2021, the combined gross revenue of Debtors was in excess of $3.8 million.[7] Because of the amount of debt, Debtors' eligibility under subchapter V was challenged,[8] and on May 13, 2022, amended schedules were filed in each case to remove the subchapter V

---

[6] Doc. 6.

[7] *Id.*

[8] *E.g,* Doc. 76 p. 1 (alleging "Debtors' noncontingent[,] liquidated[,] secured and unsecured debts exceed $17 million, more than double the statutory limit of $7.5 million").

designations.[9] Collectively, Debtors currently own 23 radio stations, 11 of which have been noticed for sale.[10]

RMM's list of creditors who have the 20 largest unsecured claims filed with the initial petition include the American Society of Composers, Authors and Publishers (ASCAP), as the holder of a contingent, unliquidated, and disputed claim for $119,000, and Johnson Family Enterprises, Inc. (Johnson) as the holder of a contingent, unliquidated claim for $650,000. The amended schedule of unsecured creditors filed when the subchapter V designation was removed also include these two claims. On May 19, 2022, Johnson filed a proof of claim for $656,709.44, stating the claim is secured by recorded mortgages, but the value of the property and the amount of the claim that is secured is unknown. On June 3, 2022, ASCAP, by its counsel Loeb & Loeb, filed a proof of claim for $1,673,824.20, stating it is unsecured. During argument on these matters, the Court was informed that Loeb & Loeb has since withdrawn from representation of ASCAP in this case.

The UST contacted RMM's unsecured creditors concerning service on an unsecured creditors' committee. Three creditors responded. They were

---

[9] Doc. 104.

[10] *See* Doc. 130. Nine of the stations are owned by Debtor RMM and two are owned by Debtor RMMW.

ASCAP, Johnson, and a creditor having an interest in one of the related debtors. On July 7, 2022, the UST appointed ASCAP and Johnson as the sole members of the Committee. RMM responded by filing the motion to disband or reformulate the Committee. The Committee applied for the appointment of Loeb & Loeb as counsel, Swanson Bernard as local counsel, and Dundon Advisors as financial advisors. RMM objects to the appointments of counsel and the financial advisor, requesting that the applications be denied or, if granted, that the proposed hourly fees of the professionals be amended to prevailing Kansas City hourly rates.

**Analysis**

**A. The Motion to Disband or Reformulate the Committee**

Section 1102(a)(1)[11] provides "as soon as is practicable after the order for relief under chapter11, . . .the United States trustee *shall* appoint a committee of creditors holding unsecured claims." It is noteworthy that the statute makes such appointment by the UST mandatory and fails to articulate any role for the court, making the appointment of a committee an administrative function of the UST. Accordingly, the majority of courts hold

---

[11] 11 U.S.C. § 1102(a)(1). All references to Title 11 in the text are to the section number only.

that a bankruptcy court's role is limited is to review of the UST's appointment of a committee under the arbitrary and capricious standard.[12]

As to membership on the committee, § 1102(b)(1) provides that the committee "shall ordinarily consist of persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee." For the Committee, the members are thus required to be unsecured creditors, which by definition include holders of disputed claims, continent claims, unliquidated claims, and claims secured by a lien on property of the debtor to the extent the value of the collateral is less than the amount of the claim.[13] Changes in the membership of a committee are addressed by § 1102(a)(4), which states: "On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee . . ., if the court determines that the change is necessary to ensure adequate representation of creditors."

A review of the docket in this case in early July revealed circumstances for appointment of an unsecured creditors' committee. This is a Chapter 11 case and is not governed by subchapter V. RMM's schedule E/F includes a

---

[12] *In re JNL Funding Corp.*, 438 B.R. 356, 360 (Bankr. E.D. N.Y. 2020).

[13] *See* 11 U.S.C. § 101(5) & § 506. *See also* 7 *Collier on Bankruptcy* ¶ 1102.02 (Richard Levin & Henry J. Sommer eds.-in-chief, 16th ed. 2018).

significant number of unsecured creditors, whose claims total almost $1.4 million. RMM's secured and unsecured debts exceed $7.5 million. Two creditors are willing to serve on the Committee.

RMM argues the UST acted arbitrarily and capriciously when appointing a two-member committee comprised of Johnson and ASCAP, asserting that neither member is representative of the general unsecured creditors in the case. As to Johnson, RMM contends it could be a fully secured creditor because it asserts a second priority lien on collateral that has been valued in excess of the amount of the first lien. As to ASCAP, a broadcast music licensor, RMM argues that it is a critical vendor whose claim must be satisfied as a prerequisite to a confirmed plan.

These arguments fail to show the UST acted arbitrarily and capriciously when appointing the Committee. Both Johnson and ASCAP are included in RMM's own schedule of the 20 largest unsecured creditors. The UST, who is required to appoint a committee early in the case, necessarily relied on the schedules. The proofs of claims filed by ASCAP and Johnson assert unsecured claims. Further, as to both members, RMM's contention that they may cease to be unsecured creditors in the future is not a cause to exclude them from initial membership; rather it could be the basis for a later change in membership under § 1103(a)(4).

RMM's additional arguments that the appointment of a Committee was arbitrary and capricious cannot prevail in the face of the statutory mandate that the UST shall appoint a committee. The Court accepts RMM's contention that only a limited number of unsecured claimants will potentially benefit from a committee in this case. At the time of the hearing, a total of thirty-eight claims had been filed. RMM pointed out that if claims of insiders, priority claimants and music licensors are excluded, only thirteen general unsecured claims remain, and all but five of these are represented by counsel. But the Code requires appointment without regard to the number of unsecured creditors who may potentially benefit.

The Court also accepts RMM's position that this is not a large case and the cost of the Committee may jeopardize reorganization.[14] At oral argument, one of RMM's secured creditors, although taking no positions on the pending matters, advised the Court that this case is heading to administrative insolvency. The Court has no reason to question that observation.[15] According to RMM, the Court should disband the Committee because Congressional

---

[14] Debtors do not generate significant income; the consolidated monthly operating report for the period ending August 31, 2022, shows gross income of $298,571. Doc. 234.

[15] When deciding to file for relief, Debtors submitted that they qualified for subchapter V. The cost of an unsecured creditors' committee was not anticipated.

8

policy is to reduce the cost of Chapter 11 relief for smaller estates. The Court agrees that such a policy is reflected in the §1102(a) exception to the mandatory appointment of a committee of unsecured creditors in subchapter V cases. But this is not a subchapter V case, and there is no other statutory exception. Debtor has not cited and the Court has not found any case law exception to appointment for smaller cases not meeting the subchapter V criteria or where the likely cost will burden reorganization.

The Court questions the need for a committee of unsecured creditors in this case. Most importantly, the Court is concerned about the cost of the Committee. It appears that the cost may not be justified by the resulting benefit and may detrimentally impact reorganization efforts. Further, although the case does not qualify for subchapter V, it is not a large Chapter 11 case. As stated above, when the cases were filed, Debtors collectively had thirty-four employees and approximately 275 creditors.[16] In 2021, the combined gross revenue of the four debtors was somewhat in excess of $3.8 million.[17] Debtors' business is primarily ownership of small rural radio stations broadcasting in western Kansas and adjacent areas. The claims register for this case includes few unsecured creditors of the type generally

---

[16] Doc. 6.

[17] *Id.*

9

thought to benefit from a committee. The Committee has only two members because the unsecured creditors as a group lacks interest in a committee. The Court is curious about the motives behind the members' and counsels' interest in serving on and representing the Committee, but motivation is not relevant at this point. The Court questions whether the cost of the Committee in this case be justified by the potential benefit. Most importantly, the Court is very concerned that the cost of the Committee will be a significant burden to RMM and detrimentally impact efforts to reorganize.

Regardless of these concerns, the Court concludes it must deny the motion to disband or reformulate the Committee. RMM's arguments about Committee membership, the absence of a significant number of general unsecured creditors likely to benefit from the Committee's work, and the probable detrimental effect of the Committee's expenses on reorganization efforts are legitimate, but they do not establish that the UST acted arbitrarily and capriciously when appointing the Committee.

### B. Debtor's limited objection to the applications by the Committee to engage counsel, Loeb & Loeb, LLP; Swanson Bernard, LLC, as local counsel; and financial advisors, Dundon Advisors, LLC.

The Committee seeks approval to employ Loeb & Loeb, LLP (Loeb) as counsel; Swanson Bernard, LLC (Swanson) as local counsel, and Dundon

Advisors, LLC (Dundon) as financial advisors. Debtor makes a limited objection to each application based upon the rates to be charged for the services to be provided to the Committee by these applicants.

Loeb, whose offices are in New York City, has recognized expertise and extensive experience and knowledge in fields of Chapter 11 bankruptcies and the media and radio industries. It has represented dozens of committees and has expensive experience working on radio station bankruptcies. The Loeb application seeks compensation as follows: $795 per hour for Schuyler Carroll, $780 per hour for Daniel Besikof, and $588 per hour for Noah Weingarten. Paralegal hourly rates are billed at $372 per hour. The Swanson Application seeks compensation as follows: $440 per hour for Matthew Faul and $180 per hour for paralegals and legal assistants. Dundon Advisors are located in New York City, California and Shanghai, China. These professionals seek compensation at the hourly rates ranging from $765 to $625 per hour.

RMM objects to approval of the forgoing rates. RMM argues that these rates are in excess of the rates generally charged in the Kansas City area. In support, RMM attaches a survey conducted by the Missouri Lawyers Media in 2021, showing that the average hourly rate in the Kansas City area for

11

bankruptcy counsel is approximately $320 per hour. This rate is consistent with the Court's extensive experience reviewing fee applications.

The fact that an application to employ includes fees higher than customary in the Kansas City are is not a basis to deny approval. Although the Court frequently awards fees at rates higher than those generally charged in the Kansas City market, this is not because the rates stated in an approved application are binding upon the Court. An application states hourly rates agreed upon by the Committee and the professional. As stated in § 328, the Court may allow compensation different from the compensation provided in the approved application, if such fees "prove to have been improvident in light of developments not capable of being anticipated at the time of the" approval of the application. This Court's Professional Fee and Expenses Guidelines advises that the Court's policy is to exercise its authority under § 328.[18]

---

[18] The policy includes the substance of § 328 and as to hourly rates, states:
> Subject to the Court's reserved power to limit fees under § 328 of the Bankruptcy Code and subject to the requirement of § 330 that compensation be reasonable, local area attorneys may be compensated at their usual and customary rate. Professionals employed in cases that are of national scope and present complex issues requiring the skill and experience of attorneys from other parts of the country may be allowed compensation at their usual and customary rates, again subject to the Court's discretion under § 328 and § 330.

*Judge Somers Professional Fee and Expense Guidelines* 4-5 (June 11, 2019), https://www.ksb.uscourts.gov/sites/ksb/files/DLSFeeGuidelines.pdf.

Further, that policy provides that rates for professionals above the local prevailing rates are in general reserved for professionals engaged "in cases that are of national importance and complex issues requiring the skill and experience of attorneys from other parts of the country."

The three applications before the Court include hourly rates above, or at least at the very top of, the prevailing Kansas City rates. Whether final compensation will be based upon these rates remains an open question. As to the rates for New York counsel and the financial advisor, approval of fees based upon these rates will require examination of whether this is in fact, as presently contended by the Committee, a case of national scope presenting complex issues. Further, approval of final compensation for Committee professionals will be subject to evaluation of the benefit provided to unsecured creditors in light of the assets available for payment of administrative expenses.

For the foregoing reasons, the Court approves the applications for employment of professionals, even though they include hourly rates for professionals in excess of the average hourly rates charged by bankruptcy counsel in the Kansas City area.

13

## Conclusion

The Court denies Debtor's motion to disband or reformulate the unsecured creditors' committee appointed in this case. Section 1102(a)(1) directs the UST to appoint an unsecured creditors committee in Chapter 11 case not subject to subchapter V. The Court can set aside the appointment only if the UST acted arbitrarily and capriciously. As stated above, Debtor's concerns about Committee membership, the absence of a significant number of general unsecured creditors likely to benefit from the Committee's work, and the probable detrimental effect of the Committee's expenses on reorganization efforts, are legitimate, but they do not establish that the UST acted arbitrarily and capriciously when appointing the Committee.

The Court approves the Committee's applications for appointment of professionals and overrules Debtor's objection based upon the hourly rates of the professionals. Approval of the rates does not bind the Court when reviewing applications for compensation.

**IT IS SO ORDERED.**

**###**