SO ORDERED.

SIGNED this 10th day of November, 2022.



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

___

Designated for online use only
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**Rocking M Media, LLC, et al.,**

                Debtors.[1]

Case No. 22-20242
Chapter 11

## Memorandum Opinion and Order
## on Jurisdictional Issue Asserted in Support of
## Debtors' Motion to Reject Meridian LMA

Debtors move to reject a Local Programming, Marketing, and Option Agreement (LMA) between Debtor Rocking M Media, LLC (RMM) and Meridian Media, LLC (Meridian). The LMA is a contract whereby RMM, as

---

[1] The Debtors in these Chapter 11 cases, their case numbers, and acronyms are: Rocking M. Media, LLC (RMM), case no. 22-20242 (lead case); Rocking M. Media Wichita, LLC (RMMW), case no. 22-20243; Rocking M Radio, Inc. (RMR), case no. 22-20244; and Melia Communications, Inc. (MCI), case no. 22-20245.

the Federal Communication Commission (FCC) licensee of two radio stations, sold to Meridian the right to supply the stations' programming and granted Meridian an option to purchase the stations. In support of the motion to reject,[2] Debtors argue, in the alternative, that Debtors never agreed to the LMA, the LMA was terminated prepetition, and if it was in force on the date of filing, the LMA may be rejected under § 365.[3] Meridian objects to the Motion, and responds that RMM agreed to the LMA, RMM's prepetition attempt to terminate the LMA was a breach of contract, and the LMA was a valid, enforceable contact on the date this bankruptcy case was filed.[4]

RMM thereafter asserted that the FCC, not this Court, has jurisdiction to determine the validity of the LMA, and if valid, whether RMM was authorized to terminate the LMA.[5] As part of an agreement to suspend a hearing on the motion to reject, RMM and Meridian, before undertaking any

---

[2] Doc. 72.

[3] 11 U.S.C. § 365. All references in the text to title 11 shall be to the section number only.

[4] Doc. 99. Gammon Miller, LLC is also a party to the objection and related briefs. Gammon Miller, LLC was a party to a separate agreement with Debtors dated August 20, 2019, and is not a party to the LMA that is the subject of the present controversy.

[5] These arguments must have been asserted in discussions between counsel for the parties, as they are not included in pleadings filed before the agreement to submit the jurisdictional question to this Court.

2

Case 22-20242    Doc# 305    Filed 11/10/22    Page 2 of 16

discovery, agreed to submit the jurisdiction question to this Court.[6] Briefs have been filed. For the reason set forth below, the Court rejects RMM's contention that the FCC has exclusive jurisdiction over the validity and enforceability of the LMA, finds that some issues raised by the parties will be resolved by state law, and holds that the doctrine of primary jurisdiction governs whether the Court will refer factual issues involving federal communications law to the FCC.

**I.     Background Facts**

Except as noted, for purposes of the jurisdiction issue, Meridian does not controvert the background facts stated by RMM in support of its position. Those facts are as follows.

Debtors are a family-owned business operating radio stations and other media platforms throughout Kansas since 2007. In 2014, Christopher Miller, the son of principals Doris and Merle Miller, was named president of RMM. In March 2019, Christopher was removed as president and shortly thereafter formed his own company, Meridian. RMM agreed to assign certain radio stations to Meridian in exchange for Meridian's assumption of certain debt.

---

[6] Doc. 176. RMM appears by Sharon L. Stolte. Meridian appears by Todd A. Luckman.

In addition, there were discussions about RMM and Meridian entering into a LMA involving two additional stations, KXUH, in Minneapolis, Kansas, and KVOB, in Lindsborg, Kansas (collectively the "Proposed LMA Stations"). For a period of forty-eight months, Meridian was to: (i) provide programming for the Proposed LMA Stations; (ii) pay RMM for the airtime; and (iii) reimburse RMM for the expenses incurred by RMM in operating the Proposed LMA Stations. After expiration of the LMA, Meridian was to have an option to purchase the stations. The record includes a written contract dated October 1, 2020, which is alleged to have been signed by Doris and Merle Miller on behalf of RMM.[7] Meridian thereafter operated the Proposed LMA Stations.

RMM sent Meridian a termination letter dated December 2, 2021, demanded a full accounting of revenue and expenses, and took the Proposed LMA Stations off the air. Meridian asserts that the LMA was valid and RMM wrongfully terminated the LMA. Meridian commenced litigation for injunctive relief in the District Court of McPherson County, Kansas and filed for a declaratory ruling before the FCC.

---

[7] RMM contends it did not agree to the LMA, and, assuming a contract, that Meridian violated FCC policies applicable to local programming agreements. Meridian contends RMM agreed to the LMA as evidenced by a written contract and disputes the allegation of violation of FCC policies.

4

On March 26, 2022, RMM and three related entities filed for relief under Chapter 11. On April 21, 2022, Debtors filed the Motion for an Order Authorizing the Rejection of Certain Executory Contracts ("Motion").[8] As to the LMA, Debtors assert that the prepetition breaches by Meridian caused damage to Debtors and cannot be cured. Rejection of the LMA with Meridian is sought as "just a confirmation of that termination"[9] to facilitate sale of the two Proposed LMA Stations.

Meridian objected to the Motion. As to the LMA, it first contended that as a threshold issue the Court must determine if the LMA was an executory contact on the date of filing that is subject to rejection. Second, assuming the LMA was executory, Meridian contends rejection was not the correct business judgment.[10]

On August 6, 2022, the Court approved an order proposed by the Debtors and Meridian adjourning a scheduled evidentiary hearing on the Motion, stating that Meridian had no objection to the proposed sale of the

---

[8] Doc. 72.

[9] *Id.* p. 6.

[10] In addition to any claims arising from the Motion, Meridian asserts a $4.8 million damage claim for breach/rejection of the LMA. Proof of Claim 28.

5

Proposed LMA Stations, and setting a schedule for briefing of the "legal jurisdiction issues."[11]

## II. Analysis

### A. The issue to be adjudicated

The parties do not agree on the statement of the "legal jurisdiction issues" to be determined. RMM states there are two issues: (1) "Does the FCC have exclusive subject matter jurisdiction to determine the validity of the alleged LMA?"; and (2) "If the LMA is valid, does the FCC have exclusive jurisdiction to determine if the termination of the alleged LMA was proper?"[12] When making these contentions, RMM alleges Meridian "committed several acts and inactions in violation of very specific FCC policies,"[13] including, for example, that Meridian utilized airtime on the Proposed LMA Stations for over a year without compensation to RMM, Meridian failed to provide information about political programming aired on the stations, and Meridian changed programming without notifying RMM.

Meridian states the issue is: "Does the authority and jurisdiction of the FCC under 47 U.S.C. § 301 require the bankruptcy court to remand or

---

[11] Doc. 176 p. 2.

[12] Doc. 220 p. 3.

[13] Doc. 206 p. 6.

abstain from consideration of factual or legal issues regarding the rejection of the LMA . . . under 11 U.S.C. § 365?"[14] Meridian argues the contract issues before the Court are governed by state law, not federal communications law, and this Court has jurisdiction over those issues.

After reviewing the parties' positions as stated in their briefs, the Court reframes the "legal jurisdiction issue" as follows: How will this Court proceed to rule on the contract disputes inherent in prosecuting and defending the Motion to reject the LMA given the fact that there is an assertion that both state contract law and federal communications law appear to be applicable? As explained below, the Court rules: (1) the FCC does not have exclusive jurisdiction to determine the validity and enforceability of the LMA; (2) federal communications law does not preclude the application of state contract law; and (3) under the doctrine of primary jurisdiction, the Court will in the future decide whether some factual issues shall be referred to the FCC.

---

[14] Doc. 205 p. 4.

**B. The FCC does not have exclusive jurisdiction over the validity and enforceability of the LMA.**

RMM contends, without exception, the FCC has exclusive jurisdiction over the validity and enforceability of the LMA. Reliance is placed on § 310(d) of the Communications Act of 1934.[15] It provides:

> No . . . station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby.[16]

It is well established that a local marketing agreement "which gives brokers 'too much' control over a station violates [47 U.S.C.] § 310(d) by transferring control over the brokered station without prior FCC permission."[17] The FCC has stated it has jurisdiction "over all types of transfer of control"[18] of licensed radio stations.

---

[15] 47 U.S.C. § 310(d).

[16] *Id.*

[17] Michael L. Lewyn, *When is Time Brokerage A Transfer of Control? The FCC's Regulation of Local Marketing Agreements and the Need for Rulemaking* 6 Fordham Intell. Prop. Media & Ent. L.J. 1, 4 (1995).

[18] *Albert J. Feyl*, 15 F.C.C. 823, 826 (1951).

8

The Court rejects the suggestion that exclusive jurisdiction as to the validity and enforceability of the LMA follows from the fact that the FCC has jurisdiction over various types of transfers of control under 47 U.S.C. § 310(d). RMM does not explain how the existence of agency jurisdiction is equivalent to exclusive jurisdiction. The Court also finds the two cases relied upon by RMM discussing exclusive jurisdiction provide insufficient support for RMM's position. They address jurisdiction over claims against the FCC, not disputes between private parties.

The first case is *NextWave Personal Communications*.[19] In *NextWave*, the Chapter 11 debtor, the high bidder at a government auction of radio station licenses, brought an adversary proceeding seeking to set aside its resulting obligation to the FCC in payment for the licenses as a constructively fraudulent transfer under state law. The FCC appealed from adverse bankruptcy court rulings, affirmed by the District Court, which allowed the debtor for a price of $1.022 billion to retain licenses for which its bid of $4.74 billion had been accepted. The Second Circuit reversed. It held the bankruptcy and district courts impaired the FCC's method for selecting

---

[19] *FCC v. NextWave Pers. Commc'ns, Inc. (In re NextWave Pers. Commc'ns, Inc.)*, 200 F.3d 43 (2nd Cir. 1999).

9

licensees and in effect "exercised the FCC's radio-licensing function."[20] The Second Circuit observed that where the FCC decides which entities are entitled to spectrum licenses under FCC rules and regulations, the agency is exercising its regulatory authority. "Because [under 28 U.S.C. § 2342 and 47 U.S.C. § 402] jurisdiction over claims brought against the FCC in its regulatory capacity lies exclusively with the federal courts of appeals, the bankruptcy and district courts lacked jurisdiction to decide the question of whether [debtor] had satisfied the regulatory conditions placed by the FCC upon its retention of the Licenses."[21] *Nextwave* does not support RRM's argument. The proceeding by RMM to reject the LMA with Meridian is not an action against the FCC in its regulatory capacity.

The second case on which RMM relies in support of its exclusivity argument is *In re FCC*.[22] It likewise does not support exclusive jurisdiction of the FCC with respect to the contract issue raised by RMM. After the *NextWave* decision, the FCC revoked the licenses at issue (by a notice to re-auction) and upon motion of the debtor, the bankruptcy court held that the FCC violated the automatic stay. The FCC petitioned for a writ of mandamus,

---

[20] *Id.* at 55.

[21] *Id.* at 54.

[22] *In re FCC*, 217 F.3d 125 (2nd Cir. 2000).

which the Second Circuit granted. The Second Circuit found that the FCC decision to re-auction was regulatory and outside the jurisdiction of the bankruptcy court.[23]

Unlike the cases relied on by RMM, this case does not challenge actions taken by the FCC. Here the communications law issues are asserted in response to an objection to a motion to reject an executory contract, a dispute between private parties that does not challenge actions of the FCC.

In addition, RMM's arguments overlook established law that FCC jurisdiction over the transfer of FCC licenses does not result in the displacement of state contract law issues. The FCC recognizes that an alleged violation of the Federal Communications Act and the FCC's rules "is an issue separate and distinct from the issue of whether [a contract] is enforceable under state contract law."[24] As the FCC has stated, a party to a local management agreement may properly bring a "private contractual dispute seeking monetary damages before a local court of competent jurisdiction."[25] The FCC lacks the resources and expertise to fully adjudicate state law

---

[23] *Id.* at 139-40.

[24] *Mid Atl. Network*, 23 FCC Rcd. 7582, 7586 (2008).

[25] *Rocking M Radio, Inc.*, 25 FCC Rcd. 1322, 1327 (2010).

breach of contract issues; it defers to local courts in such matters.[26] The local courts to which the FCC defers include bankruptcy courts.[27]

The Court concludes that RMM's position regarding the extent of FCC jurisdiction is far too broad and is rejected.

### C. Contract law issues will be decided under state law by this Court

As the foregoing discussion demonstrates, FCC jurisdiction over the transfer of radio licenses does not result in local courts losing jurisdiction over contract law issues. In this case, both Debtors and Meridian have asserted positions that must be resolved under contract law by this Court. For example, RMM alleges it did not agree to the LMA or, if there was a valid contract, Meridian breached its contractual obligations. Meridian asserts the LMA is valid under state law and it did not breach the agreement.

RMM's argument that the FCC has exclusive jurisdiction over the LMA disregards established FCC deference to decisions of local courts in contract disputes between private parties.

---

[26] *Arecibo Radio Corp.*, 101 F.C.C.2d 545, 548 (1985).

[27] *See Interactive Control Two, Inc.*, 16 FCC Rcd. 18948, 18961 (2002).

**D. The Court will apply the primary jurisdiction doctrine when deciding whether to refer factual issues governed by federal communications law to the FCC**

Denial of RMM's position regarding exclusive jurisdiction leads to the question of whether this Court may decide factual issues arising under federal communications law. The division of jurisdiction between federal agencies and the courts is governed by the doctrine of primary jurisdiction. "Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies."[28] It applies to "'claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'"[29] "If the issue is one 'that Congress has assigned to a specific agency,' the doctrine of primary jurisdiction allows the court to stay the judicial proceedings and direct the parties to seek a decision before the appropriate agency."[30] "Even where a court has subject matter jurisdiction over a claim, courts have discretion to refer an issue or issues to an administrative agency" under the doctrine of primary jurisdiction.[31]

---

[28] *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005).

[29] *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

[30] *S. Utah Wilderness All.*, 425 F.3d at 750-51 (quoting *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996)).

[31] *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007).

13

There is no mechanical formula for deciding when to apply the doctrine.[32] As a Supreme Court justice has explained, "the question in each instance is whether a case raises 'issues of fact not within the conventional experience of judges,' but within the purview of an agency's responsibilities."[33] The doctrine of primary jurisdiction addresses two concerns, regulatory uniformity and agency expertise.[34] Courts consider on a case-by-case basis whether the reasons for the primary jurisdiction doctrine are present and whether the doctrines purposes will be aided by its application in the pending matter.[35] In the Tenth Circuit, a court's "decision to invoke the primary jurisdiction doctrine 'require[s] it to consider whether the issues of fact in the case: (1) are not within the conventional expertise of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and

---

[32] *Id.* at 1239.

[33] *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring in part and concurring in the judgment) (quoting *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952)).

[34] *S. Utah Wilderness All.*, 425 F.3d at 751.

[35] *TON Servs., Inc.,* 493 F.3d at 1239 (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

consistency in the regulation of the business entrusted to the particular agency.'"[36]

In this case, the question of reference to the FCC has been presented to the Court before there is a factual record. At this point, the validity and enforceability of the LMA under state law is challenged. Whether Meridian actually acted in the manner alleged to constitute improper control over the stations is not known. There is no factual basis to inform the Court's discretion when applying the doctrine of primary jurisdiction. Absent unforeseen events, the Court believes that deciding whether to refer issues in this controversy to the FCC should be reserved until after trial on the merits.

### III. Future Procedure

In the agreed order establishing a briefing schedule for the legal jurisdiction issue, the parties addressed the future course of the disputed Motion under three circumstances: if the Court finds jurisdiction lies with the FCC; if the Court finds that jurisdiction lies with this Court; and if the Court find jurisdiction lies in part with the Court and in part with the FCC. The foregoing resolution of the jurisdictional question does not fit squarely within

---

[36] *Id.* (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171 1179 (10th Cir. 2005)).

any of these three categories, since it leaves open a future order referring factual issues to the FCC.

The Court therefore rules that by December 14, 2022, the parties shall submit for the Court's consideration an agreed scheduling order proposing dates for discovery, dispositive motions, a proposed evidentiary hearing date (estimated to take two days), and any other matters the parties deem necessary.

## IV. Conclusion

RMM's request that the issue of the validity and enforceability of the LMA be immediately referred to the FCC is denied. The parties shall submit a proposed agreed scheduling order to the Court and otherwise proceed in accord with the above rulings.

**It is so ordered.**

###